William P. SHANNAHAN, Plaintiff,

v.

INTERNAL REVENUE SERVICE, Defendant.

No. C08–452JLR.

United States District Court,
W.D. Washington,
at Seattle.

April 27, 2009.

David John Lenci, Michael K. Ryan, Samuel R. Castic, K & L Gates LLP, Seattle, WA, for Plaintiff.

Nicole Maria Elliott, Carmen M. Banerjee, U.S. Department of Justice, Washington, DC, Robert Patrick Brouillard, U.S. Attorney's Office, Seattle, WA, for Defendant.

## ORDER

JAMES L. ROBART, District Judge.

This matter comes before the court on Defendant Internal Revenue Service's ("IRS") motion for summary judgment (Dkt.# 32). Having reviewed the papers submitted by the parties and heard the argument of counsel, for the reasons that follow, the court directs the clerk to re-note the motion for summary judgment for July 17, 2009, and directs the parties to proceed as described herein.

## I. BACKGROUND

This is a dispute under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. It arises against the backdrop of civil enforcement and criminal proceedings against Steven N.S. Cheung and Linda Su, a.k.a. Linda Cheung ("the Cheungs"), in connection with their alleged failure to report taxable income generated by West Coast International Limited ("WCI") and West Coast International (Parking) Limited ("WCIP") (collectively, "the Entities").

### A. Criminal Prosecution

The United States Attorney's Office ("USAO") for the Western District of Washington initiated a criminal investigation of the Cheungs in the 1990s. (Declaration of Janet Freeman ("Freeman Decl.") (Dkt.# 32–6) ¶ 4.) In November 1998, the USAO requested assistance from the IRS in the criminal investigation. (Declaration of Caesar White ("White Decl.") (Dkt.# 32–4) ¶ 3.) On January 28, 2003, a grand jury returned an indictment against the Cheungs. (Freeman Decl. ¶ 7.) The Cheungs failed to appear for their initial appearance and arraignment, and the court issued warrants for their arrest. (Id. ¶¶ 10, 12–13.) The criminal charges remain pending in United States v. Cheung, Case No. CR03–037RSL (W.D.Wash.). (Id. ¶¶ 8, 12.) The USAO believes the Cheungs presently reside in the People's Republic of China. (Id. ¶¶ 11, 14.) The IRS continues to assist the USAO in investigating the Cheungs, "although the process has been somewhat stalled because of the Cheungs' failure to appear for their arraignment." (White Decl. ¶ 8.)

### B. Civil Examination

The IRS commenced a civil examination of the Cheungs prior to the conclusion of the criminal proceedings. (White Decl. ¶ 10.) The IRS explains that while it ordinarily will not commence a civil examination until after the completion of criminal proceedings, it did so with respect to the Cheungs because the criminal prosecution had been stalled by the Cheungs's failure to appear. (Id.) On July 27, 2007, the IRS sent 4549–A Income Tax Discrepancy Adjustment Forms, commonly referred to as Revenue Agent Reports ("RAR"), to the Cheungs, reflecting the IRS's determination that the Cheungs owed additional taxes, as well as penalties and interest, of close to $17 million. RARs include facts and conclusions that are typically drawn from documents in the possession of the IRS. On behalf of the Cheungs, Plaintiff William P. Shannahan, counsel for both the Cheungs and the Entities, protested the RARs and requested the factual and investigative documents cited and relied upon in the issuance of the RARs. The IRS denied Mr. Shannahan's request.

### C. Original Documents

In January 2003, the Entities provided original business documents ("Original Documents") to IRS Agent Molly Mahoney. (Declaration of William P. Shannahan ("Shannahan Decl.") (Dkt.# 37) ¶ 4.) The documents include "original copies of account and transaction documents for WCI for the years 1993–1996, business documents for WCI for the years 1997–

1999, business ledgers for [WCIP] for the years 1992–1993, and account activity detail reports for [WCIP] for 1995–1998 . . . ." (*Id.*) The Entities did not make copies of the Original Documents. (*Id.*) The Entities allege that they need the documents in order to operate their businesses and in the event of an audit. (*Id.* ¶ 6.) The Entities requested the return of the Original Documents, and the IRS denied the request. (Declaration of David J. Lenci ("Lenci Decl.") (Dkt.# 38) ¶ 8.)

## D. FOIA Requests

On October 16, 2007, Mr. Shannahan filed two FOIA requests with the IRS. (Declaration of Meghan Mahaney ("Mahaney Decl.") (Dkt.# 32–3) ¶ 4.) Mr. Shannahan filed the first request ("the Entity Request") on behalf of the Entities. (Shannahan Decl. at 10–12.) He filed the second request ("the Cheung Request") on behalf of the Cheungs. The Entity Request seeks six categories of documents:

1. The original balance sheets, profit and loss statements, and the general ledger account of retained earnings for West Coast International Limited ("WCI") for the years of 1993 through 1999 inclusive which were delivered to Special Agent Mahoney in January of 2003, as per Attachment B.

2. A copy of any analysis, memorandum or other documents in the possession of the Internal Revenue Service computing the earnings and profits of WCI.

3. Any and all documents reflecting all wire transfers referenced in the RAR regarding WCI . . . .

4. The balance sheets, profits and loss statements, and the general ledger account of retained earnings for

West Coast International (Parking) Limited ("WCIP") for the years 1993 through 1999 inclusive which were delivered to Special Agent Mahoney in January of 2003 as per Attachment D.

· · · · ·

5. A copy of any analysis, memorandum or other documents in possession of the United States and its agencies computing the earnings and profits of WCIP.

6. Any and all documents reflecting all wire transfers referenced in the RAR regarding WCIP per Attachment B.

(*Id.*) The categories of documents requested pursuant to the Entity Request are the same as the first six categories of documents requested pursuant to the Cheung Request. The IRS denied the Entity Request. (*Id.* at 13–15.) Mr. Shannahan appealed the denial. (*Id.* ¶ 16.) The IRS appeals office denied the appeal. (*Id.* at 18–20.)

## E. FOIA Actions

On March 20, 2008, Mr. Shannahan filed four FOIA actions. The actions on behalf of Mr. Cheung and Ms. Su, Case Nos. C08–561JLR and C08–560JLR, respectively, were consolidated under Case No. C08–560JLR while the actions on behalf of WCI and WCIP, Case Nos. C08–452JLR and C08–562JLR, respectively, were consolidated under Case No. C08–452JLR. On December 3, 2008, the IRS filed a motion for summary judgment (Dkt.# 32) in Case No. C08–452JLR.[1] The IRS argues that it satisfied its obligations under FOIA and properly withheld responsive documents pursuant to Exemptions 3, 5, 6, 7(A), 7(C), and 7(D). (Mot.(Dkt.# 32) at 9–22.) In

---

1. The IRS filed a similar motion for summary judgment in Case No. C08–560JLR with re-

spect to the FOIA requests of the Cheungs.

the alternative, the IRS contends that the fugitive disentitlement doctrine supports dismissal. (*Id.* at 22–25.)

█ The IRS states that it has located 5,088 pages of documents, as well as an electronic database consisting of 373 files and 35.7 megabytes of information, responsive to the Entity Request. (Mot. at 3.) The IRS released 316 pages of documents to Mr. Shannahan, leaving a total of 4,772 pages of documents, as well as the electronic database, at issue in this case. The IRS characterizes the responsive documents as falling within five categories:

(1) Examination Workpapers Documents (42 pages): "The Examination Workpapers documents address a summary of findings of one issue being examined by IRS Examination and often serves as a coversheet for the revenue agent's work papers ... relating to that particular issue. The Examination Workpapers are each supported by pages consisting of the revenue agent's working papers, e.g., notes, calculations, findings and conclusions.... The Examination Workpapers documents were created by the Internal Revenue Service ... during the civil examination of the Cheungs and were based largely upon information obtained during the U.S. Attorney's criminal investigation of the Cheungs." (Mahaney Decl. ¶ 16.)

(2) Agents' Working Papers (4,721 pages): These documents consist of "revenue agents' and special agents' notes, categorizations, analysis, research, calculations, and summaries." (*Id.* ¶ 17.)(A) "The Working Papers obtained from IRS Exam are documents that were prepared or gathered by the revenue agents as part of his or her determination of the Cheungs' correct income tax liability and were largely obtained from information provided from the criminal investigation of the Cheungs. These Working papers consist of the revenue agent's findings and research as to each of the topics covered by the primary Examination Workpapers documents." (*Id.*) (B) "The Working Papers obtained from IRS Criminal Investigation are documents that were prepared or gathered by the special agent as part of her determination of the Cheungs' potential criminal tax liability. These Working Papers consist of the special agent's findings and research as to the potential criminal liability of the Cheungs as well as documented evidence obtained for purposes of the criminal proceeding." (*Id.*)

(3) Interview Notes, Third Party Contacts, and Contact Sheets (2 pages): These documents consist of "interview notes for interviews and agendas conducted with third party witnesses and proposed interview questions for the Cheungs." (*Id.* ¶ 18.) "Included within the Interview Notes and Third Party Contact Information are questions formulated prior to the interviews, handwritten notes taken during or after the interviews, and typed notes transcribed from handwritten notes. All of the Interview Notes and Third Party Contact Information were based on information gathered during the criminal investigation and any actual interviews that took place were part of the criminal investigation." (*Id.*)

(4) Internal Correspondence (7 pages): These documents consist of "correspondence between the revenue agent and other IRS employees describing issues that arose in the course of the examination of the

Cheungs.... The Internal Correspondence documents include e-mails between Service employees regarding the civil and criminal investigation of the Cheungs." (*Id.* ¶ 19.)

(5) Electronic Database: The Electronic Database "was obtained from IRS Criminal Investigation and contains information that was prepared or gathered by the special agent as part of her determination of the Cheungs' potential criminal tax liability. This database consists of manipulations of bank information obtained with respect to the Cheungs, which bank information was originally obtained pursuant to a Mutual Legal Assistance Treaty with the Republic of Hong Kong." (*Id.* ¶ 20.)

The IRS does not provide a *Vaughn* index[2] in support of its motion for summary judgment. Instead, the IRS submits four declarations that discuss the withheld documents and the claimed FOIA exemptions. (Dkt. ## 32–3, 32–4, 32–5, 32–6.)

## II. DISCUSSION

### A. Freedom of Information Act

■ FOIA establishes an enforceable right to obtain access to federal agency records, except where such records are protected from disclosure by nine exemptions. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct.

2311, 57 L.Ed.2d 159 (1978). FOIA "mandates 'full agency disclosure' unless information is clearly exempted under one of FOIA's nine statutory exemptions." *Pac. Fisheries Inc. v. United States*, 539 F.3d 1143, 1147 (9th Cir.2008). Courts are to construe the nine FOIA exemptions narrowly. *GC Micro Corp. v. Def. Logistics Agency*, 33 F.3d 1109, 1112 (9th Cir.1994).

### B. Summary Judgment Standard in FOIA Cases

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir.2007). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir.2000). This court conducts a *de novo* review of an agency's response to a FOIA request. 5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

---

2. The so-called "*Vaughn* index" takes its name from the District of Columbia Circuit's decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973). *See also Bowen v. U.S. Food & Drug Admin.*, 925 F.2d 1225, 1227 n. 1 (9th Cir.1991). In *Vaughn*, the D.C. Circuit rejected an agency's conclusory affidavit and required the agency to provide detailed support for its claimed FOIA exemptions. *Vaughn,*

484 F.2d at 826–28. Under Ninth Circuit precedent, "[a] *Vaughn* Index must: (1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption." *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1326 n. 1 (9th Cir.1995).

■ "Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *Los Angeles Times Commc'ns, LLC v. Dep't of the Army*, 442 F.Supp.2d 880, 893 (C.D.Cal.2006). The usual summary judgment standard does not extend to FOIA cases because the facts are rarely in dispute and courts generally need not resolve whether there is a genuine issue of material fact. *Minier v. Cent. Intel. Agency*, 88 F.3d 796, 800 (9th Cir.1996). Courts instead follow a two-step inquiry when presented with a motion for summary judgment in a FOIA case. *Los Angeles Times*, 442 F.Supp.2d at 893.

■ First, courts must evaluate "whether the agency has met its burden of proving that it fully discharged its obligations under the FOIA." *Id.* The agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents. *Zemansky v. U.S. Envtl. Prot. Agency*, 767 F.2d 569, 571 (9th Cir.1985). "The issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Id.* (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C.Cir.1984) (emphasis in original).) An agency may rely upon "reasonably detailed, nonconclusory affidavits submitted in good faith" to demonstrate that the search was adequate. *Id.* (quoting *Weisberg*, 745 F.2d at 1485.)

■ Second, if the agency satisfies its initial burden, the court must determine "whether the agency has proven that the information that it did not disclose falls within one of the nine FOIA exemptions." *Los Angeles Times*, 442 F.Supp.2d at 894. In meeting its burden, "the government may not rely upon 'conclusory and generalized allegations of exemptions.'" *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir.1980) (quoting *Vaughn*, 484 F.2d at 826). As a

general matter, "government agencies seeking to withhold documents requested under the FOIA have been required to supply the opposing party and the court with a 'Vaughn index,' identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." *Wiener v. Fed. Bureau of Investigation*, 943 F.2d 972, 977 (9th Cir.1991). The purpose of a *Vaughn* index "is not merely to inform the requester of the agency's conclusion that a particular document is exempt from disclosure under one or more of the statutory exemptions, but to afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court an opportunity to intelligently judge the contest." *Id.* at 979.

■ Finally, even if the agency satisfies the two-part test, it generally must still disclose any reasonably segregable portions of the withheld documents. Section 552(b) provides:

> Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection. The amount of information deleted, and the exemption under which the deletion is made, shall be indicated on the released portion of the record, unless including that indication would harm an interest protected by the exemption in this subsection under which the deletion is made. If technically feasible, the amount of the information deleted, and the exemption under which the deletion is made, shall be indicated at the place in the record where such deletion is made.

5 U.S.C. § 552(b). "The burden is on the agency to establish that all reasonably segregable portions of a document have been

segregated and disclosed." *Pac. Fisheries,* 539 F.3d at 1148.

## C. Adequate Search

 The court must first determine whether the IRS has met its burden in demonstrating that it engaged in an adequate search reasonably calculated to uncover all relevant documents. *See Zemansky,* 767 F.2d at 571. The IRS argues that its search for relevant documents was reasonable, although not exhaustive. (Mot. at 7.) Meghan Mahaney, who spearheaded the search, contacted all IRS personnel known to have been involved with the criminal and civil investigations of the Cheungs, provided copies of the FOIA requests, asked IRS personnel whether they knew of other individuals with relevant information, and followed-up with these individuals. (Mahaney Decl. ¶ 8.) In response to her inquiries, Ms. Mahaney received numerous documents deemed responsive to the Entity Request. (*Id.* ¶¶ 9–11.) Mr. Shannahan responds that the IRS has not performed an adequate search. (Resp.(Dkt.# 39) at 15–16.) In essence, he contends that various facts suggest that the IRS did not perform independent searches in response to the Cheung Request and the Entity Request, but rather performed only a single search. (*Id.*)

Having reviewed Ms. Mahaney's declaration, the court concludes that the IRS has satisfied its burden in demonstrating that it engaged in an adequate search reasonably calculated to uncover all documents relevant to the Entity Request. Ms. Mahaney's actions constitute a reasonable search for responsive documents. The court is not persuaded by Mr. Shannahan's arguments that the IRS's search was inadequate. Mr. Shannahan correctly notes that the IRS's letter denying his FOIA appeal on behalf of the Entities lists the 17 categories of documents requested in the Cheung Request as opposed to the six categories of documents requested in the Entity Request. Mr. Shannahan believes that the IRS's explanation, *i.e.,* that this was a typographical error, strains credibility because the Cheung Request and the Entity Request were allegedly not similar. (Resp. at 15.) The facts belie this characterization. All documents requested by Mr. Shannahan in the Entity Request were also requested in the Cheung Request. (*Compare* Shannahan Decl. at 10–11 *with* Declaration of William P. Shannahan (Case No. C08–560JLR) (Dkt.# 27) at 197–199.) To the extent the IRS conducted a broader search than otherwise necessary, this does not render the search inadequate. Likewise, the similarity between the IRS's pleadings in this case and in C08–560JLR does not call into question the reasonableness of the IRS's search. Mr. Shannahan argues that "[i]t is impossible to understand how the [IRS] can seriously contend that two separate requests by the Entities include the same documents that encompass the 17 requests made on behalf of the Cheungs." (Resp. at 16.) He acknowledges, however, that the IRS actually identified 5,735 pages of documents responsive to the Cheung Request and only 5,088 pages of documents responsive to the Entity Request. (*Id.* at 16 n. 5.) As discussed above, it is not surprising that the documents identified by the IRS as responsive to the two requests would include substantial overlap because all of the documents requested in the Entity Request were also requested in the Cheung Request. Mr. Shannahan's concern, to the extent it is valid, appears to focus on the IRS's failure to segregate documents as opposed to the adequacy of the search. (*See id.* at 16.) Finally, the manner in which the IRS disclosed responsive documents does not bear on the adequacy of the search. (*Id.*) The IRS therefore has satisfied the first part of the two-part test.

## D. Records In Possession of the USAO

██ For purposes of FOIA requests, the term "agency records" encompasses records that are (1) created or obtained by an agency and (2) under agency control at the time of the request. *U.S. Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 144–45, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989). "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records.'" *Id.* at 142 n. 3, 109 S.Ct. 2841.

The IRS argues that some of the records sought by Mr. Shannahan do not qualify as agency records of the IRS. Specifically, the IRS asserts that 96 boxes of documents obtained and maintained by the USAO do not constitute agency records because they "were not created or obtained by the [IRS] and were not under the [IRS's] control at the time of the FOIA request." (Mot. at 8.) These documents include 29 boxes of documents obtained by the USAO from international sources, 4 boxes of documents obtained from confidential sources, 42 boxes of documents obtained through grand jury proceedings, 16 boxes of work product material, and 4 boxes of miscellaneous documents. (Freeman Decl. ¶ 26.) The four boxes of miscellaneous documents include the Original Documents provided by the Entities to the IRS. (*Id.* ¶ 26(d)(ii); Reply (Dkt.# 40) at 4–7.) Mr. Shannahan challenges the IRS's claim that the Original Documents do not

constitute "agency records" for purposes of FOIA. (Resp. at 5–13.)

At oral argument, counsel for the IRS suggested that, if the parties jointly approached the USAO, Mr. Shannahan would likely be allowed access to some or all of the Original Documents. Counsel for Mr. Shannahan agreed to this general proposal, and the court directed counsel to speak with the appropriate USAO employee at the close of the hearing. Counsel have advised the court that the parties are in the process of requesting the documents from the USAO and that this process will be resolved within the coming weeks. (*See* Dkt. # 43.)

The court therefore reserves the question of whether the documents in the possession of the USAO constitute agency records. The court anticipates that any dispute with respect to these documents will be resolved amicably between the parties and the USAO. The court directs the parties to file a joint status report with respect to the documents held by the USAO by May 22, 2009.

## E. FOIA Exemptions

██ The IRS argues that the withheld documents are exempt from disclosure under FOIA Exemptions 3, 5, 6, 7(A), 7(C), and 7(E). (Mot. at 9–22.) Mr. Shannahan challenges these designations, asserting that the IRS has failed to present sufficient detail regarding both the withheld documents and the applicability of the claimed exemptions.[3] (Resp. at 1, 5, 16.)

---

**3.** Mr. Shannahan does not articulate any substantive legal arguments regarding the IRS's claimed FOIA exemptions in his response in this case. Instead, Mr. Shannahan seeks to incorporate by reference all of the arguments made in his response to the IRS's motion for summary judgment in Case No. C08–560JLR. (Resp. at 15 n. 4.) The IRS contends that the court should deem all arguments not briefed in this case to be waived. (Reply at 1.) Mr. Shannahan's approach is improper. *Cf. Leroy v. Pamax Dev., Inc.,* 29 Fed.Appx. 514, 515

(10th Cir.2002); *AT & T Commc'ns of Cal. v. Pac. Bell,* No. C96–1691 SBA, 1996 WL 940836 (N.D.Cal. July 3, 1996). It both interferes with the applicable page limitation and places the burden on the court to apply legal analysis made on the facts of one case to the facts of another. The court is also mindful that Mr. Shannahan objects to the IRS allegedly treating the FOIA requests interchangeably while attempting to do the same here. These considerations all counsel against per-

He contends that the IRS should submit either a *Vaughn* index or more detailed declarations in order to provide him and the court with adequate information to evaluate the IRS's decision to withhold the documents. (Resp. II (Case No. C08–560JLR) (Dkt.# 25) at 6–10.) Mr. Shannahan requests that the court order limited discovery to determine whether the documents have been properly withheld under the claimed exemptions. (*Id.* at 25–26.)

## 1. Exemption 3

■ Exemption 3 of FOIA incorporates nondisclosure protections established in other federal statutes. Exemption 3 protects from disclosure "matters that are . . . specifically exempted from disclosure by statute (other than section 552b of this title) provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). 26 U.S.C. § 6103(a) prohibits the disclosure of returns or return information and qualifies as a statute that exempts disclosure within the meaning of 5 U.S.C. § 552(b)(3). *Kamman v. U.S. Internal Revenue Serv.,* 56 F.3d 46, 48 (9th Cir.1995); *Johnson v. Comm'r,* 239 F.Supp.2d 1125, 1137 (W.D.Wash.2002). Section 6103(a) provides that "[r]eturns and return information shall be confidential," specifying that "no officer or employee of the United States . . . shall disclose any return or return information obtained by him in any manner in connection with his service as

such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term 'officer or employee' includes a former officer or employee." 26 U.S.C. § 6103(a). The statute defines "return information" to include:

[A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense. . . .

26 U.S.C. § 6103(b)(2)(A). Section 6103 authorizes the IRS to disclose return information to a taxpayer so long as "the Secretary determines that such disclosure would not seriously impair Federal tax administration." 26 U.S.C. § 6103(e)(7).

The IRS argues that all of the withheld documents fall under Exemption 3 because their disclosure would constitute a serious impairment of federal tax administration. (Mahaney Decl. ¶¶ 16(d), 17(d), 18(d), 19(c), 20(c); White Decl. ¶ 15.) Mr. White declares that he has determined that disclosure of the withheld documents would seri-

---

mitting Mr. Shannahan to incorporate arguments by reference. Nonetheless, the court will consider Mr. Shannahan's arguments. The court reaches this conclusion because the cases raise substantially similar legal questions and because the goals of FOIA would not be served by allowing the IRS to avoid its obligation to justify its claimed exemptions.

In the future, the court will not consider arguments incorporated by reference. To the extent the parties cannot present their arguments within the applicable page limitations, they must request leave to file over-length pleadings pursuant to Local Rules W.D. Wash. CR 7(f).

ously impair federal tax administration. (White Decl. ¶ 15.) Mr. Shannahan responds that the IRS has not met its burden in providing sufficient information for either him or the court to evaluate whether Exemption 3 applies. (Resp. II at 19–20.) He characterizes the declarations submitted by the IRS as providing "boilerplate recitations" instead of describing the facts and details necessary to evaluate the applicability of Exemption 3. (*Id.* at 20.)

The court concludes that the IRS has not satisfied its burden in demonstrating with sufficient particularity that the withheld documents qualify as return information under 26 U.S.C. § 6103(b)(2)(A). The Ninth Circuit requires the IRS to submit more than mere "conclusory and generalized allegations" in order to meet its burden of demonstrating that documents qualify as return information exempted from disclosure under Exemption 3 and 26 U.S.C. § 6103(a). *Kamman,* 56 F.3d at 49; *see also Osborn v. Internal Revenue Serv.,* 754 F.2d 195, 197 (6th Cir.1985). Neither the court nor Mr. Shannahan can adequately evaluate whether the documents qualify as return information based on the four declarations submitted by the IRS in this case. The declarations clearly identify the general categories of documents at issue. They do not, however, identify particular documents. Although the IRS correctly observes that a *Vaughn* index is not necessary in all cases, the four declarations do not serve as an adequate alternative. In essence, the IRS asks the court and Mr. Shannahan to trust its own assessment as to the nature of the documents. The declarations submitted do not permit the court to engage in its own *de novo* review of the soundness of the IRS's decision to withhold the documents under Exemption 3, nor do they afford Mr. Shannahan a meaningful opportunity to contest the applicability of the exemption.

The Agents' Working Papers, for instance, consist of 4,721 pages of documents. (Mahaney Decl. ¶ 17.) Ms. Mahaney states that these documents "were prepared or gathered by the revenue agents as part of his or her determination of the Cheungs' correct tax liability and were largely obtained from information provided from the criminal investigation of the Cheungs." (*Id.*) On this showing, the court has no ability to determine whether particular documents qualify as return information. The other categories contain fewer documents, but present similar problems. Even assuming the declarations present more information than those at issue in *Wiener,* as argued by the IRS, the court remains unconvinced that the IRS has met its burden under FOIA. The Ninth Circuit requires an agency to provide either a *Vaughn* index or particularized declarations "to afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court an opportunity to intelligently judge the contest." *Wiener,* 943 F.2d at 979. The declarations submitted by the IRS do not satisfy this standard. Therefore, the court declines to grant summary judgment pursuant to Exemption 3 and 26 U.S.C. § 6103(a).

**2. Exemption 5**

Exemption 5 of FOIA provides that an agency may withhold "inter-agency or intraagency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption entitles an agency to withhold documents that a private party could not discover in litigation with the agency. *Pac. Fisheries,* 539 F.3d at 1148. "Specifically, it protects documents that would be covered by the attorney work-product privilege and the executive deliberative process privilege," *id.,* as well as the attor-

ney-client privilege, *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1082, 1084 n. 1 (9th Cir.1997).

#### i. Deliberative Process Privilege

 The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001). The IRS argues that some documents[4] are exempt under Exemption 5 and the deliberative process privilege. (Mot. at 19–21; Mahaney Decl. ¶¶ 16(a), 17(a), 18(a), 19(a).) In her declaration, Ms. Mahaney states that "certain" of the various categories of documents are exempt "in whole or in part" under Exemption 5. (Mahaney Decl. ¶¶ 16(a), 17(a), 18(a), 19(a).) To the extent that documents contain factual assertions that are not exempt, the IRS asserts that they may be withheld under other exemptions. (Mahaney Decl. ¶¶ 16(a), 17(a), 18(a), 19(a).) Mr. Shannahan responds that the IRS has neither properly invoked the deliberative process privilege nor shown that the documents at issue are of the type covered by the privilege. (Resp. II at 11.)

The court concludes that the IRS has not met its burden in demonstrating that Exemption 5 and the deliberative process privilege apply to the documents in this case. The IRS asserts in a general manner that Exemption 5 applies to numerous documents, but makes no attempt to provide the court with even a minimal description of particular documents. The IRS compounds this deficiency by claiming that these documents are exempt "in whole or in part," without providing any type of segregation analysis because it believes other exemptions also protect the factual assertions.

This showing is insufficient because neither the court nor Mr. Shannahan have any way to evaluate meaningfully the scope of the deliberative process privilege as it applies to these documents. *See Wiener*, 943 F.2d at 977. Furthermore, the IRS acknowledges that the deliberative process privilege does not apply to these documents in full. Instead of identifying the portions of documents not covered by the privilege, however, the IRS seeks to avoid its burden under this exemption by reference to other exemptions. This does not demonstrate that the IRS has properly invoked Exemption 5 and the deliberative process privilege. If the IRS prevails on another exemption, then it prevails on that exemption, not Exemption 5. Therefore, because the IRS has failed to meet its burden as to Exemption 5 and the deliberative process privilege, the court declines to grant summary judgment on those grounds.

#### ii. Attorney Work Product Privilege and Attorney–Client Privilege

 The attorney work product privilege protects the "mental processes of the attorney," *Klamath Water Users*, 532 U.S. at 8, 121 S.Ct. 1060, while the attor-

4. The IRS states that under Exemption 5 and the deliberative privilege process it is withholding Examination Workpapers pages 444–446, 449, 451, 641–42, 647–49, 654–660, 716–17, 720–23, 862–64, and 866–68; Agents' Working Papers pages 310–12a, 314–15, 318, 363–66, 370, 373–74, 376, 402–06, 408, 412–15, 417, 440, 469–85, 592, 644, 646, 651, 653, 661–93, 714–15, 719, 724, 727–47, 1182, 1389–1592, 1654–59, 1661–76, 1762–67, 1775–1858, 1860–61, 1864–1943, 1945–47, 1949–1957, 1975–83, 1988–2074, 2085–2230, 2274–375, 2378–632, and 2647–58; Interview Notes, Third Party Contacts, and Contact Sheets pages 330 and 865; and Internal Correspondence pages 317, 319, 1710–12, and 2376–77. (Mot. at 20.)

ney-client privilege protects communications between an attorney and her client, *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The IRS argues that Agents' Working Papers pages 331 to 347 are exempt under Exemption 5 and the attorney work product privilege. (Mot. at 22; Mahaney Decl. ¶ 17(a).) Ms. Mahaney also suggests that the documents are exempt under the attorney-client privilege, although the IRS does not argue this in its motion. (Mahaney Decl. ¶ 17(a).) Mr. Shannahan again objects that the IRS has not provided him with sufficient information to evaluate the applicability of these privileges. (Resp. II at 13–14.)

The court concludes that the IRS has not met its burden in demonstrating that Exemption 5 and either the work product privilege or the attorney-client privilege apply to documents in this case. The IRS provides only generalized information regarding the withheld documents. This is not sufficient. Therefore, because the IRS has failed to meet its burden as to Exemption 5 and either the attorney work product privilege or the attorney-client privilege, the court declines to grant summary judgment on those grounds.

**3. Exemption 7**

 Exemption 7 of FOIA protects from disclosure "records or information compiled for law enforcement purposes" but only to the extent that the agency justifies its decision to withhold the documents by reference to one of six enumerated types of harm. 5 U.S.C. § 552(b)(7). Judicial review of an Exemption 7 claim requires a two-part inquiry. *Fed. Bureau of Investigation v. Abramson,* 456 U.S. 615, 622, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982). First, the court must determine whether the documents qualify as records or information compiled for law enforcement purposes. *Id.* Second, the agency

must show that disclosure would result in one of the six types of harm. *Id.*

**i. Documents Compiled for Law Enforcement Purposes**

 The IRS constitutes a law enforcement agency within the meaning of Exemption 7. *Church of Scientology Int'l v. U.S. Internal Revenue Serv.,* 995 F.2d 916, 919 (9th Cir.1993); *Lewis v. Internal Revenue Serv.,* 823 F.2d 375, 379 (9th Cir. 1987). Documents compiled by the IRS in the exercise of its law enforcement mandate qualify as documents compiled for law enforcement purposes within the meaning of Exemption 7. *See Lewis,* 823 F.2d at 379. Both criminal and civil enforcement activities of the IRS fall within the scope of Exemption 7. *Church of Scientology Int'l,* 995 F.2d at 919; *see Ctr. for Nat'l Policy Review on Race & Urban Issues v. Weinberger,* 502 F.2d 370, 373 (D.C.Cir. 1974).

Here, the declarations of Ms. Mahaney and Mr. White establish that all of the documents responsive to the Entity Request constitute "records or information compiled for law enforcement purposes" under Exemption 7. (Mahaney Decl. ¶¶ 16–20; White Decl. ¶¶ 12–13.) These documents were gathered or created for purposes of either the civil examination or the criminal investigation. The court thus concludes that the IRS has met its burden in demonstrating that the records at issue were compiled for law enforcement purposes.

**ii. Exemption 7(A)**

 Exemption 7(A) permits an agency to withhold law enforcement records that "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). "The IRS need only make a general showing that disclosure of its investigatory records would in-

terfere with its enforcement proceedings." *Lewis,* 823 F.2d at 380; *Barney v. Internal Revenue Serv.,* 618 F.2d 1268, 1272–73 (8th Cir.1980) ("Under exemption 7(A) the government is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding"). Exemption 7(A) stands out from other FOIA exemptions because it depends on the general category of the records as opposed to the individual subject matter of particular documents. *Lewis,* 823 F.2d at 380. Accordingly, a *Vaughn* index may be futile, and could "defeat the purpose of Exemption 7(A)" by allowing the requesting party to discover the exact nature of documents supporting the IRS's case earlier than he otherwise would or should. *Id.*

The IRS argues that Exemption 7(A) applies to all of the documents due to the ongoing criminal investigation of the Cheungs. (Mot. at 15–16.) In his declaration, Mr. White states that release of the documents could (1) "allow the Cheungs to determine the nature, direction, scope, and limits of the criminal proceedings, and the strategies and theories being utilized by the government"; (2) "allow the Cheungs earlier and greater access to information about the proceedings than they would otherwise be entitled to receive, and would deprive the government of reciprocal discovery since the Cheungs are now unavailable"; (3) "enable the Cheungs to craft explanations or defenses based upon the government's analysis, depriving the government of the facts known to the Cheungs"; and (4) "enable the Cheungs to conceal or disguise income, or take other steps to avoid having income attributed to them." (White Decl. ¶ 16.)

Mr. Shannahan argues that the IRS has not demonstrated the harm contemplated by Exemption 7(A). (Resp. II at 14–15.) "The fact that a defendant in an ongoing criminal proceeding might obtain documents through the FOIA that they could not otherwise get through discovery, or prior to the point at which they would be entitled to get them through discovery, does not constitute harm for the purpose of Exemption 7(A)." (*Id.* at 14.) Mr. Shannahan believes that the declarations of Ms. Mahaney and Mr. White are too generalized, and that the IRS has failed to show how the early release of documents, which he seeks in connection with the civil enforcement proceeding, could impair the criminal proceedings. (*Id.* at 15.) Additionally, Mr. Shannahan contends that "any potential interference with the criminal proceedings in this case is completely of the Government's own doing" because the IRS chose to initiate civil enforcement proceedings prior to resolution of the criminal case. (*Id.* at 15–16.)

The court concludes that the potential harm alleged by the IRS is of the type that "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Mr. Shannahan relies primarily on *North v. Walsh,* 881 F.2d 1088 (D.C.Cir.1989), in arguing that the IRS has not shown the harm contemplated by Exemption 7(A). (Resp. II at 14–15.) In essence, Mr. Shannahan argues that disclosure to the Entities of documents, which otherwise either would not be available through discovery in the criminal proceeding or would not be available at this stage, does not constitute harm under Exemption 7(A). (*Id.*) In *North,* the D.C. Circuit concluded that an agency had not met its burden under Exemption 7(A) where it did not assert that disclosure could be expected to harm the government's criminal case or impede its investigation, but rather claimed only that disclosure would interfere with the discovery process as established by the district court. *North,* 881 F.2d at 1098–99. *North* is inapposite. Although the IRS does as-

sert that disclosure under FOIA would allow "earlier and greater access to information about the proceedings than [the Cheungs] would otherwise be entitled to receive," the IRS does not posit this concern as the sole or ultimate harm at issue. (White Decl. ¶ 16.) Rather, the IRS believes that disclosure to the Entities— which presumably will result in disclosure to the Cheungs because Mr. Shannahan represents both the Cheungs and the Entities—will allow the Cheungs to use information contained in the documents as a means "to conceal or disguise income, or take other steps to avoid having income attributed to them." (*Id.*) This type of harm rises above mere interference with discovery procedures as in *North.*

Mr. Shannahan next argues that the IRS brought this harm on itself by commencing the civil examination prior to the conclusion of the criminal proceedings. (Resp. II at 15.) The court finds this argument unpersuasive. By declining to appear for their arraignment and initial appearance in the criminal case, the Cheungs effectively stalled resolution of the criminal proceedings. Accordingly, the Cheungs's decision not to appear was a catalyst for the IRS's decision to initiate the civil examination prior to the conclusion of the criminal proceedings.

Despite these preliminary conclusions, the court finds that the IRS has not demonstrated a sufficient connection between the withheld documents and the alleged harm for purposes of Exemption 7(A). Ninth Circuit precedent establishes that the IRS need not provide a *Vaughn* index or other document-by-document showing of harm when withholding documents under Exemption 7(A). *Lewis*, 823 F.2d at 380. "The IRS need only make a general showing that disclosure of its investigatory records would interfere with its enforcement proceedings." *Id.* This does not mean, however, that any generalized show-

ing will be sufficient. An agency must identify sufficiently distinct categories of documents in order to demonstrate how disclosure of that category of document would interfere with enforcement proceedings. *See Bevis v. Dep't of State,* 801 F.2d 1386, 1389–90 (D.C.Cir.1986). As discussed above, the declarations provided by the IRS are too broad and too generalized to "afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court an opportunity to intelligently judge the contest." *Wiener,* 943 F.2d at 979. The court declines to grant summary judgment under Exemption 7(A).

### iii. Exemption 7(C)

 Exemption 7(C) permits an agency to withhold law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). To determine whether documents qualify for protection under Exemption 7(C), the court must balance the public interest in disclosure against the privacy interest in nondisclosure. *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 171–72, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004). The concept of personal privacy under Exemption 7(C) extends to information about "persons interviewed as witnesses or initial suspects but whose link to the official inquiry may be the result of mere happenstance." *Id.* at 166, 124 S.Ct. 1570. If the privacy interests of third parties have been established, then the burden shifts to the FOIA requester. *Lane v. Dep't of the Interior,* 523 F.3d 1128, 1137 (9th Cir. 2008). The requester must show (1) "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake" and (2) that "the information is likely to advance that interest." *Favish,* 541 U.S. at 172, 124 S.Ct. 1570.

The IRS argues that some documents[5] are exempt under Exemption 7(C) because their disclosure would reveal the identities of "any individual who may have decided to cooperate in the investigation of the Cheungs, WCI, and WCIP." (Mot. at 17.) The documents withheld under Exemption 7(C) were "obtained during the course of the Cheungs' criminal investigation" and "reference third parties who were not the subject of either the criminal or civil investigation." (Mahaney Decl. ¶¶ 16(e), 17(e), 18(e), 19(d).) The IRS believes that disclosure "would compromise the privacy of innocent third party taxpayers," (Mahaney Decl. ¶ 16(e)), and could lead to "possible harassment or intimidation," (Mot. at 17). Mr. Shannahan does not contest the validity of this privacy interest. (*See* Resp. II at 16–17.)

▮ The court concludes that the IRS has met its burden in demonstrating the existence of a valid privacy interest. Individuals who cooperate with governmental investigations have an interest in maintaining the privacy of their identities and the nature of their assistance to the investigation. This privacy interest is not as acute as an individual's privacy interest in his or her FBI rap sheet, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 780, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), but it is nonetheless the type of interest protected by Exemption 7(C). *See Favish,* 541 U.S. at 166, 124 S.Ct. 1570. The IRS has thus met its initial burden.

Next, the burden shifts to Mr. Shannahan to demonstrate a significant public interest in support of his FOIA request and to show that the information requested is likely to advance that interest. *Id.* at 172, 124 S.Ct. 1570. Mr. Shannahan does not attempt to make this showing. (Resp. II at 16–17.) Instead, he argues only that the IRS has not indicated why redaction of identifying information is not possible or appropriate. (*Id.*) The question of segregation is distinct from the question whether Exemption 7(C) applies. Therefore, because Mr. Shannahan has presented no argument with respect to the applicability of Exemption 7(C), the court concludes that the IRS has carried its burden and demonstrated that Exemption 7(C) applies to the documents withheld under this exemption. As discussed below in Part II. E.5, however, the court declines to grant summary judgment under Exemption 7(C) because the IRS has not performed a segregation analysis with respect to these documents.

The IRS also asserts that Exemption 6 applies to the same documents allegedly protected under Exemption 7(C). (Mot. at 18 n. 3.) Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The IRS raises this argument in a footnote and does not analyze how Exemption 6 applies to the facts of this case. The IRS believes that Exemption 7(C) and Exemption 6 protect the same documents for essentially the same reasons. (Mot. at 18 n. 3.) On this cursory showing, the court declines to analyze the applicability of Exemption 6.

### iv. Exemption 7(E)

▮ Exemption 7(E) permits an agency to withhold law enforcement rec-

---

5. The IRS states that under Exemption 7(C) it is withholding Examination Workpapers pages 444–45, 641, and 647–48; Agents' Working Papers pages 310, 314–15, 318, 444–45, 455, 593, 602–40, 1291, 1302–08, 1654,- 1988–2040, 2085–2230, and 2753–5474; Interview Notes, Third Party Contacts, and Contact Sheets page 330; and Internal Correspondence page 317. (Mot. at 17.)

ords that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The government must show that the technique or procedure at issue is not well known to the public, *see Rosenfeld v. U.S. Dep't of Justice,* 57 F.3d 803, 815 (9th Cir.1995), and must describe the general nature of the technique or procedure at issue, although it need not provide specific details, *see Judicial Watch, Inc. v. U.S. Dep't of Commerce,* 337 F.Supp.2d 146, 181 (D.D.C.2004).

The IRS argues that some documents [6] are exempt under Exemption 7(E) because they "describe in detail the techniques and procedures undertaken by the agent to conduct this particular investigation and also provide insight into the techniques and procedures undertaken with respect to the ongoing criminal investigation." (Mahaney Decl. ¶ 16(c).) The IRS does not identify specific techniques in its motion or reply in this case.[7] In response, Mr. Shannahan argues that the IRS has provided only a cursory justification for withholding under Exemption 7(E). (Resp. II at 18.)

The court concludes that the IRS has not satisfied its burden in demonstrating that the withheld documents are exempt under Exemption 7(E). Ms. Mahaney provides little insight as to the particular techniques or procedures at issue. Likewise, she offers no discussion regarding whether the techniques or procedures at issue are well known. The court therefore declines to grant summary judgment under Exemption 7(E).

#### 4. Electronic Database

The IRS argues that the electronic database is exempt from disclosure pursuant to Exemptions 3, 7(A), and 7(E). (Mahaney Decl. ¶ 20; White Decl. ¶ 15.) For the reasons discussed above, the court declines to grant summary judgment on these grounds. The IRS has failed to present sufficient information to meet its burdens under these exemptions.

#### 5. Segregation Analysis

■■■ FOIA requires an agency to provide any reasonably segregable portion of a record that is exempt from disclosure. 5 U.S.C. § 552(b). "The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed." *Pac. Fisheries,* 539 F.3d at 1148. The IRS has not performed a segregation analysis. Here, having concluded that the IRS only met its burden under Exemption 7(C) and because the IRS has presented no segregation analysis with respect to the documents withheld under that exemption, the court declines to grant summary judgment with respect to the documents withheld under Exemption 7(C).

#### F. *Vaughn* Index

Having reviewed the papers submitted by the parties and heard the oral argument of counsel, the court directs the clerk

---

**6.** The IRS states that under Exemption 7(E) it is withholding Examination Workpapers pages 302–06, 447–48, and 867–68; Agents' Working Papers pages 320–29; and Interview Notes, Third Party Contacts, and Contact Sheets pages 330 and 865. (Mot. at 18.)

**7.** By contrast, in its motion for summary judgment in Case No. C08–560JLR, the IRS states that certain, unidentified pages of the withheld documents contain discriminant function ("DIF") scores. (Mot. II (Case No. C08–560JLR) (Dkt.# 22) at 19.) The IRS does not make a similar claim in this case, which suggests that the documents withheld under Exemption 7(E) do not contain DIF methodology.

to re-note the motion for summary judgment (Dkt.# 32) for consideration for July 17, 2009. The court directs the IRS to file a *Vaughn* index to address the court's concerns as identified in this order. "A *Vaughn* Index must: (1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption." *Citizens Comm'n on Human Rights*, 45 F.3d at 1326 n. 1. The *Vaughn* index should sufficiently identify individual documents being withheld so that the court and Mr. Shannahan can evaluate the applicability of the claimed exemptions. A *Vaughn* index based upon a representative sampling of the withheld documents is appropriate in this case due to the large number of documents at issue. *See Neely v. Fed. Bureau of Investigation*, 208 F.3d 461, 467 (4th Cir.2000). The representative sampling should include documents from each of the five categories and must cover at least 500 pages of documents.[8]

The court rejects the IRS's invitation to review the *Vaughn* index in camera. (*See* Reply at 9 n. 5.) The IRS has not shown that allowing Mr. Shannahan access to an appropriate *Vaughn* index will cause the types of harm sought to be avoided by the FOIA exemptions. Furthermore, requiring an agency to provide a *Vaughn* index is designed "to afford the requester an opportunity to intelligently advocate release of the withheld documents...." *Wiener*, 943 F.2d at 979. Without access to the *Vaughn* index, Mr. Shannahan would not be able to advocate for the release of the withheld documents in a meaningful and particularized manner. Such advocacy holds the IRS to its burdens and focuses the issues for decision-making by the court. The court notes,

however, that the IRS need not provide such detailed information in the *Vaughn* index as to defeat the purposes of the FOIA exemptions. Rather, the IRS must use its best judgment in determining the appropriate amount of detail to include in the *Vaughn* index.

The IRS shall file a *Vaughn* index by June 26, 2009. Mr. Shannahan may file a response not to exceed 15 pages on or before July 10, 2009. The IRS may file a reply not to exceed 10 pages on or before July 17, 2009.

### G. Fugitive Disentitlement Doctrine

 The fugitive disentitlement doctrine provides that "one who has removed himself from the jurisdiction of the courts has no claim upon them for an order which would require the delivery of the files of the United States government to his hiding place." *Doyle v. U.S. Dep't of Justice*, 494 F.Supp. 842, 845 (D.D.C.1980). The Supreme Court cautions against the "harsh sanction" of disentitlement, and encourages courts to use the doctrine only as a last resort. *See Degen v. United States*, 517 U.S. 820, 827–29, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996). Here, the court declines to dismiss Mr. Shannahan's FOIA case under the fugitive disentitlement doctrine at this time. This is a drastic sanction, and one the court will not consider until after having reviewed the supplemental filings of the IRS, as discussed above.

### III. CONCLUSION

For the foregoing reasons, the court directs the parties to proceed as described above and directs the clerk to re-note the IRS's motion for summary judgment

8. The court is mindful that some of the withheld documents may individually span a wide range of pages. The IRS may not satisfy this court's order by providing a *Vaughn* index that includes only a small handful of individual documents.